UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
MAHAMMAD DUKURAY,            :
                Petitioner,   :
                              :
v.                           :
                             :
THOMAS DECKER, as Field Office Director,     :
New York City Field Office, U.S. Immigration :
& Customs Enforcement; DIANE                 :   **OPINION AND ORDER**
MCCONNELL, as Assistant Field Office         :
Director, New York City Field Office, U.S.   :   18 CV 2898 (VB)
Immigration & Customs Enforcement;           :
KIRSTJEN NIELSEN, as Secretary, U.S.         :
Department of Homeland Security;             :
JEFFERSON B. SESSIONS III, as Attorney       :
General, U.S. Department of Justice; and     :
STEVEN AHRENDT, as Warden, Bergen            :
County Jail,                                 :
                Respondents. :
--------------------------------------------------------------x

Briccetti, J.:

      Petitioner Mahammad Dukuray brings this petition pursuant to 28 U.S.C. § 2241 for a writ of habeas corpus. Petitioner seeks immediate release, release on a previously issued bond, or that he be provided with a bond hearing before an immigration judge.

      For the reasons set forth below, the petition is GRANTED IN PART and DENIED IN PART.

      By November 8, 2018, respondents shall provide petitioner with a bond hearing consistent with this Opinion and Order. If respondents fail to do so, they shall immediately release petitioner.

**BACKGROUND**

I.      <u>Convictions and Arrest</u>

Petitioner is a citizen of Spain. He was admitted to the United States on November 10, 2009, through the Visa Waiver Program ("VWP") outlined in 8 U.S.C. § 1187, with authorization to remain in the United States until February 8, 2010. Petitioner remained in the United States beyond that date without authorization.

Since then, petitioner has sustained five criminal convictions, including for trespass in April 2013, attempted tampering with physical evidence in October 2015, disorderly conduct in January and May 2016, and criminal sale of marijuana in the fourth degree in August 2016.

On December 13, 2017, U.S. Immigration and Customs Enforcement ("ICE") arrested petitioner outside Manhattan Criminal Court after he attended a court hearing for a case that was later dismissed. Petitioner was subsequently detained at the Bergen County Jail in Hackensack, New Jersey.

Also on December 13, 2017, ICE served petitioner with a VWP Notice of Intent to Issue a Final Administrative Removal Order, charging petitioner as removable under 8 U.S.C. § 1227(a)(1)(B), for remaining in the United States beyond February 8, 2010, without authorization. ICE also served petitioner with a VWP Final Administrative Removal Order, which ordered petitioner removed to Spain.

Petitioner requested an opportunity to apply for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). On January 10, 2018, ICE served petitioner with a Form I-863 Notice of Referral to Immigration Judge, which referred petitioner to an immigration judge for asylum-only proceedings.

II.       <u>Immigration Court</u>

On February 5, 2018, petitioner appeared with counsel before an immigration judge for his first master calendar hearing. Petitioner's counsel requested a bond hearing and a continuance. The immigration judge adjourned the case to March 14, 2018, for a master calendar hearing.

At the March 14, 2018, hearing, the immigration judge granted petitioner release upon the posting of a $5,000 bond. Both parties waived appeal.

The next day, ICE filed a motion to reconsider the bond decision, arguing the immigration judge lacked jurisdiction to conduct petitioner's bond hearing because he was a VWP violator. The immigration judge advanced the third master calendar hearing to April 2, 2018.

On April 2, 2018, the immigration judge granted ICE's motion to reconsider and revoked bond. Petitioner did not appeal.[1]

The immigration judge scheduled a fourth master calendar hearing for May 2, 2018, for petitioner to submit his applications for relief from removal. At the May 2, 2018, hearing, petitioner submitted his applications and requested an individual hearing date. The immigration judge offered dates in June 2018, but petitioner's counsel requested more time. The immigration judge scheduled a merits hearing for July 9, 2018.

The July 9 hearing did not go forward because the Department of Homeland Security ("DHS") did not physically produce petitioner, and "the Immigration Judge could not successfully connect to his detention facility via video teleconference." (Doc. #16). The

---

[1]      Petitioner filed the instant habeas petition on April 2, 2018, while detained at the Varick Street Immigration Detention Center in Manhattan.

immigration judge rescheduled petitioner's hearing for August 10, 2018, but on that day the immigration judge adjourned petitioner's merits hearing to October 5, 2018, "as multiple other individuals were scheduled for the same time slot as [petitioner]." (Doc. #16).

The merits hearing proceeded on October 5, 2018. As of October 15, 2018, the immigration judge had not rendered a decision on petitioner's applications for relief from removal.

In addition, on September 24, 2018, petitioner submitted a Humanitarian Parole Request, on the ground that petitioner "suffers from severe epilepsy, requires shoulder surgery, and was recently placed on suicide watch in Respondents' custody at Bergen County Jail due to his deteriorating mental health." (Doc. #18).

## DISCUSSION

I. Petitioner's Continued Detention Without a Bond Hearing

The parties disagree on the statutory basis for petitioner's detention, and whether petitioner is entitled to a bond hearing under those statutes.

Petitioner argues the statutory basis for his detention falls under 8 U.S.C. § 1226 ("Section 1226"), and therefore he is entitled to a bond hearing. Section 1226(a) authorizes the Attorney General to detain an alien "pending a decision on whether the alien is to be removed from the United States." Section 1226(c) requires the Attorney General to detain aliens who, among other things, are "deportable by reason of having committed" certain offenses.

Respondents, relying on the Board of Immigration Appeals' decision in Matter of A-W-, 25 I. & N. Dec. 45 (2009), argue 8 U.S.C. § 1187 ("Section 1187") is the statutory basis for petitioner's detention, and an immigration judge does not have the authority to conduct a bond redetermination hearing under Section 1187. Section 1187 outlines the VWP, under which

"certain aliens may enter the United States without a visa for up to 90 days if they waive their right to contest any action for [removal] (other than on the basis of an asylum application) against them." Guerra v. Shanahan, 831 F.3d 59, 63 n.2 (2d Cir. 2016) (internal quotation omitted) (alterations in original).

The statutory basis for the detention of a VWP violator in asylum-only proceedings is a matter of first impression in the Second Circuit. However, the Court need not decide it.

As discussed below, due process requires that petitioner be afforded a bond hearing when his detention becomes unreasonable, regardless of whether the statutory basis for petitioner's detention falls under Section 1187 or Section 1226. Further, applying a fact-based analysis, the Court concludes petitioner's continued detention without a bond hearing would be unreasonable.

Petitioner is therefore entitled to a bond hearing.

A. Due Process

Due process requires a bond hearing when an alien's detention under either Section 1187 or Section 1226(c) becomes unreasonable.

In the Second Circuit, indefinite detention without a bond hearing under Section 1226(c) violates due process. Lora v. Shanahan, 804 F.3d 601, 613 (2d Cir. 2015), vacated 138 S. Ct. 1260 (2018). Indeed, "all circuits agree that section 1226(c) includes some 'reasonable' limit on the amount of time that an individual can be detained without a bail hearing." Id. at 614. In Lora v. Shanahan, the Second Circuit determined, as a matter of statutory interpretation, that Section 1226(c) included a six-month limit on the amount of time that an individual could be detained. Id. at 616.

The Supreme Court has since vacated Lora v. Shanahan, 138 S. Ct. 1260, and the Second Circuit's six-month bright-line test is no longer controlling law. See Jennings v. Rodriguez, 138

S. Ct. 830, 846 (2018) (holding Section 1226(c) does not limit the length of an alien's detention). However, Lora v. Shanahan's reasoning—including that indefinite detention under Section 1226(c) without a bond hearing violates due process—remains "strong persuasive authority." Sajous v. Decker, 2018 WL 2357266, at *7 (S.D.N.Y. May 23, 2018), appeal filed, No. 18-2591 (2d Cir. Aug. 30, 2018). Post-Jennings v. Rodriguez, courts in the Southern District of New York have concluded that aliens subject to mandatory detention under Section 1226(c) are entitled to bond hearings "when their continued detention becomes unreasonable and unjustified." See, e.g., Brissett v. Decker, 324 F. Supp. 3d 444, 451 (S.D.N.Y. 2018) (collecting cases).

The Court agrees.

Moreover, the same standard applies even if the statutory basis for petitioner's detention falls under Section 1187. At least two district courts have held there is a reasonable time limitation for the detention of VWP violators in asylum-only proceedings without a bond hearing even if the basis for their detention falls under Section 1187. Neziri v. Johnson, 187 F. Supp. 3d 211, 213, 215 (D. Mass. 2016); Bacuku v. Aviles, 2016 WL 818894, at *8, 10 (D.N.J. Mar. 2, 2016). In both cases, the courts found the continued detention of the VWP violators unreasonable. Neziri v. Johnson, 187 F. Supp. 3d at 215; Bacuku v. Aviles, 2016 WL 818894, at *10; but see Kim v. Obama, 2012 WL 10862140, at *3 (W.D. Tex. July 10, 2012) (petitioner's continued detention did not violate due process).

Respondents argue the elimination of bond hearings for VWP violators serves the policy underlying the VWP of securing the immediate, guaranteed removal of aliens. "But the government's strong interest in protecting the [VWP] from abuse and providing for speedy

6

removal cannot justify [petitioner's] indefinite and prolonged detention." Neziri v. Johnson, 187 F. Supp. 3d at 215 (internal citations omitted).

In addition, it would be "both illogical and legally unsound to afford greater procedural protections to aliens detained under Section 1226(c) than to aliens detained under" Section 1187. Martinez v. Decker, 2018 WL 5023946, at *4 (S.D.N.Y. Oct. 17, 2018) (reasoning the court should not afford greater procedural protections to aliens detained under Section 1226(c) than to aliens detained under Section 1226(a)) (internal quotations omitted). Such a rule would result in criminal aliens detained under Section 1226(c) receiving greater procedural protections than non-criminal aliens detained under Section 1187. See id.

B. Fact-Based Inquiry

Jennings v. Rodriguez called into question whether due process requires a six-month bright-line limitation on the detention of aliens under Section 1226(c). Sajous v. Decker, 2018 WL 2357266, at *10. Thus, in Sajous v. Decker, Judge Nathan applied a "fact-based analysis" to determine whether mandatory detention under Section 1226(c) is unreasonable. See id. Courts in the Southern District of New York have overwhelmingly adopted Sajous v. Decker's fact-based inquiry. See, e.g., Cabral v. Decker, 2018 WL 4521199, at *4 (S.D.N.Y. Sept. 21, 2018) (collecting cases).

The Court agrees with the reasoning in Sajous v. Decker and will apply a fact-based analysis to determine whether plaintiff's continued detention without a bond hearing is reasonable.

In Sajous v. Decker, the court examined five factors to determine whether the petitioner's continued detention without a bond hearing had become unreasonable: (i) "the length of time the alien has already been detained"; (ii) "whether the alien is responsible for the delay";

7

(iii) "whether the detained alien has asserted defenses to removal"; (iv) "whether the alien's civil immigration detention exceeds the time the alien spent in prison for the crime that rendered him removable"; and (v) "whether the facility for the civil immigration detention is meaningfully different from a penal institution for criminal detention." 2018 WL 2357266, at *10–11 (internal quotations omitted). Other courts have also considered whether the petitioner's detention is near conclusion. See, e.g., Cabral v. Decker, 2018 WL 4521199, at *4.

All of the above factors weigh in favor of finding petitioner's continued detention without a bond hearing unreasonable.

First, petitioner has been detained for more than ten months.[2] "[D]etention that has lasted longer than six months is more likely to be 'unreasonable,' and thus contrary to due process, than detention of less than six months." Sajous v. Decker, 2018 WL 2357266, at *10 (collecting cases).

Second, the immigration court is responsible for the majority of the delay in this case. "Continued detention will also appear more unreasonable when the delay in proceedings was caused by the immigration court or other non-ICE government officials." Sajous v. Decker, 2018 WL 2357266, at *11. "Pursuit of relief from removal does not, in itself, undermine a claim that detention is unreasonably prolonged." Brissett v. Decker, 324 F. Supp. 3d at 453 (internal quotation omitted). "When an alien's detention becomes prolonged because his case has 'slipped through the cracks,' such detention is unreasonable whether the failure was caused by ICE officials, an immigration judge, an administrative clerk, or another agency such as USCIS." Sajous v. Decker, 2018 WL 2357266, at *11.

---

[2] Accordingly, plaintiff's continued detention without a bond hearing would violate due process if the Court applied a six-month bright-line test.

8

Here, petitioner requested a single one-month continuance and for a conference to be adjourned thirty days. The immigration judge, however, twice rescheduled petitioner's merits hearing, delaying it from July 9, 2018, to October 5, 2018, for administrative reasons.

Third, petitioner has submitted applications for asylum, withholding of removal, protection under the CAT, and humanitarian parole. "The Court need not inquire into the strength of these defenses—it is sufficient to note their existence and the resulting possibility that the Petitioner will ultimately not be removed, which diminishes the ultimate purpose of detaining the Petitioner pending a final determination as to whether he is removable." Sajous v. Decker, 2018 WL 2357266, at *11. Further, respondents have not asserted that petitioner's defenses are frivolous. Cf. Brissett v. Decker, 324 F. Supp. 3d at 453 (noting "there is no contention that [the petitioner's defenses] are frivolous ones").

The fourth factor strongly weighs in petitioner's favor. Petitioner was ordered removed because he stayed beyond the permissible date under the VWP, and there is no contention he would have spent any time in prison if not for his civil immigration detention.

Fifth, petitioner is being detained at the Bergen County Jail. Thus, there is no difference between the facility where petitioner is housed and a penal institution.

In addition, there is "significant reason to believe that [petitioner's detention] will continue, either because a decision on his application for asylum is not yet ready, or because he would remain detained throughout the course of an appeal by either side." Lett v. Decker, 2018 WL 4931544, at *5 (S.D.N.Y. Oct. 10, 2018).

9

Accordingly, petitioner's continued detention without a bond hearing would be unreasonable and thus a violation of due process. Petitioner is therefore entitled to a bond hearing.[3]

II.    Procedural Requirements and Burden of Proof

At petitioner's bond hearing, in order to justify petitioner's continued detention, respondents must demonstrate by clear and convincing evidence that petitioner poses a risk of flight or a danger to the community. See Martinez v. Decker, 2018 WL 5023946, at *5 ("The overwhelming majority of courts to consider the question [of what the Government's burden should be at the bond hearing] . . . have concluded that imposing a clear and convincing standard would be most consistent with due process." (internal quotations omitted)).

Respondents argue the Supreme Court rejected the imposition of a clear and convincing standard in Jennings v. Rodriguez, 138 S. Ct. 830. "However, because the Jennings majority and dissent were focused on whether the statutes required bond hearings, declining to reach the constitutional question at issue here, the Court is unpersuaded that Jennings has any bearing on the appropriate procedures consistent with due process." Hernandez v. Decker, 2018 WL 3579108, at *11 (S.D.N.Y. July 25, 2018) (internal citations omitted).

Accordingly, the Court sees no reason to depart from other courts in this district in requiring respondents, in order to justify petitioner's continued detention, to make a clear and convincing showing at petitioner's bond hearing that petitioner poses a risk of flight or a danger to the community.

---

[3]    Because the Court does not reach the issue of whether a VWP violator in asylum-only proceedings is statutorily entitled to a bond hearing, the Court grants petitioner a new bond hearing rather than reinstate the immigration judge's previously issued bond of $5,000.

10

## CONCLUSION

The petition is GRANTED IN PART and DENIED IN PART.

By November 8, 2018, respondents shall provide petitioner with a bond hearing consistent with this Opinion and Order. If respondents fail to do so, they shall immediately release petitioner.

The Clerk is instructed to close this case.

Dated: October 25, 2018
       White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge